IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
BRAVERMAN KASKEY, P.C.,           :
    Plaintiff,                    :    Civil Action No. 09-3470
                                  :
v.                                :
                                  :
MAYA TOIDZE,                      :
    Defendant.                    :
_____:

## MEMORANDUM OPINION

**RUFE, J.**                                                                                 November 19, 2013

Before the Court is Defendant Maya Toidze's Motion to Alter and Vacate Judgment by Default pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). At the Court's request, United States Magistrate Judge M. Faith Angell reviewed the briefs, held a hearing on this Motion, and filed a Report and Recommendation ("R&R"). Defendant filed objections to the R&R, and Plaintiff filed a response. For the reasons set forth herein, the Court will approve and adopt the R&R.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Court adopts the background information set forth in the R&R, and summarizes that information herein only to provide context for its opinion. The background from the R&R is supplemented with information taken from the docket in this case and from the docket in *Cooke, et al. v. Toidze, et al.,* Civ. Act. No. 07-712 (D. Ct.).

In April 2007, Defendant Maya Toidze, along with other defendants, was sued by some of her business partners in Connecticut state court, and in May 2007 that case was removed to federal court in the District of Connecticut. In May 2007, at the recommendation of a friend, Toidze retained Braverman Kaskey P.C. ("Braverman"), a Philadelphia-based law firm, to

represent her in that litigation. The retainer agreement provided that Toidze would compensate Braverman for providing legal services by paying the firm 1% of all equity interests in Maya's Meals, a company in which Toidze had a substantial equity interest, for each $20,000 of billable time incurred, and would also reimburse the firm for expenses advanced. Pursuant to the agreement, Braverman sent monthly billing statements to Toidze, which she never challenged. In 2008, Braverman moved to withdraw as counsel after settlement efforts stalled and Toidze stopped responding to Braverman's attempts to communicate with her regarding the Connecticut litigation. The Connecticut court granted the motion to withdraw and Braverman terminated its representation of Toidze in July 2008. Toidze failed to pay Braverman for legal fees and expenses incurred from June 11, 2007 through July 2008, and therefore, in 2009, Braverman brought this lawsuit for breach of contract, seeking to recover a 17.52% equity interest in Maya's Meals, valued at $350,324.50, plus $26,951.45 for unreimbursed expenses.

During the time Braverman represented Toidze, she lived at 46 Wooten Way North, Markham, Ontario, Canada. When Braverman sued Toidze for non-payment of legal fees, it attempted to serve process of the summons and complaint by process server and by mail sent to that address in Ontario. Braverman was not able to serve her at that address because she had moved. Braverman attempted to locate her by contacting the post office, checking telephone records, and conducting an internet search. Because Braverman was unable to serve Toidze at her last known address, it filed a motion for alternative service, asking to notify Toidze of the suit by newspaper publication. After a hearing, Magistrate Judge Angell found that Braverman had made a good faith effort to locate and serve Toidze, and the motion was granted.[1] In March 2010, notices were published in the *Markham Economist & Sun*, which serves the York region of Ontario, the site of Toidze's last known address, and in the *Legal Intelligencer* in Philadelphia.

---

[1] See Order dated March 9, 2010, Doc. No. 6.

Default was entered on May 10, 2010 after Toidze failed to appear, plead, or otherwise defend. Thereafter, Braverman filed a Motion for Default Judgment.

In a November 4, 2010 Memorandum and Order, Judge Pollack, who was then overseeing the case, noted that the contract provided for payment to Braverman of an equity interest in Maya's Meals.[2] Judge Pollack further noted that Toidze, the only party to the contract with Braverman, was not the sole owner of Maya's Meals, but held a 26.389% interest, and that transfers of interests appeared to be governed by an Operating Agreement which was not before the court. In addition, the Connecticut litigation among the partners in Maya's Meals was still pending, and Toidze was one of the defendants in that action. Therefore, before ruling on the motion for default judgment, Judge Pollack directed Braverman to take certain actions, among which was the requirement that it file the November 4, 2010 Memorandum and Order on the docket in the Connecticut action, and serve it on all parties to the Connecticut litigation. Braverman complied with this requirement. With regard to Toidze, who it appears was proceeding *pro se* at that point in the Connecticut litigation,[3] on November 30, 2010, Braverman sent a copy of the summons and complaint, the November 4, 2010 Order, and the Motion for Default Judgment to Toidze at two e-mail addresses and by mail sent to two different Ontario addresses.[4] One of those Ontario postal addresses and one of the e-mail addresses matched those

---

[2] Doc. No. 13.
[3] The Connecticut docket reflects that Braverman withdrew in 2008 and subsequent counsel withdrew in 2009, leaving Toidze unrepresented by counsel in that action until October 2012 when Jonathan Klein and George Lambert entered their appearances.
[4] Neither of the two addresses was the address at which service of the summons and complaint had been attempted. The November 30, 2010 notice was mailed to Toidze at 61 Osborne Family Way, Newmarket, Ontario Canada and at 225 Shaftsbury Ave, Unit 31, Richmond Hill, Ontario Canada, and e-mailed to her at moriland@roger.com and at mayatoidze@gmail.com. *See* Doc. No. 14.

3

provided by Toidze in a *pro se* brief submitted in the Connecticut litigation less than a month earlier, around October 8, 2010.[5]

On October 11, 2011, after making the necessary factual and legal findings, including findings about the adequacy of alternate service, Judge Pollack entered default judgment against Toidze for *quantum meruit* damages. Judge Angell held a hearing to determine the amount of *quantum meruit* damages on January 11, 2012. Judge Angell recommended that Judge Pollak enter judgment in favor of Braverman in the amount of $377,275.95, and Judge Pollack approved and adopted the R & R on February 22, 2012.

On December 4, 2012, Toidze's husband Alexandre Ivankine filed a Motion to Intervene and Motion for Reconsideration of Judgment by Default. The case was reassigned to this Court following Judge Pollack's death, and on February 5, 2013, the Court denied Ivankine's Motions because he lacked standing. Nine days later, Toidze filed the Motion to Vacate Default Judgment which is presently before the Court. In her Motion, Toidze argues, *inter alia,* that she was not properly served by publication in Canada, because she had moved to Russia in 2008. The Court referred the motion to Judge Angell for an R&R, and Judge Angell issued the R&R after a hearing on the issues. Toidze then filed objections to the R&R, and Braverman responded to those objections.

## II.    STANDARD OF REVIEW

The Court will review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made."[6] The Court need not rehear

---

[5] *See* D. Ct. Civ. Act. No. 07-712, Doc. No. 173, Ex. B, a brief submitted by Toidze *pro se,* in which she reported her address as 225 Shaftsbury Avenue, Until 31, Richmond Hill, Ontario Canada and her e-mail address as moriland@rogers.com.
[6] 28 U.S.C. §636(b)(1).

4

testimony nor make independent assessments of credibility where the credibility assessments of the magistrate seem sound in light of the evidence.[7]

## III. DISCUSSION

### A. Validity of Service

Federal Rule of Civil Procedure 60(b)(4) provides that relief from a final judgment may be granted if "the judgment is void." If a complaint was not properly served, a default judgment would be void.[8] The Court notes that the federal rules require proper service, which satisfies the requirements of due process, and not actual service.[9]

Toidze argues that: 1) the court erred in permitting alternative service when Braverman could have obtained Toidze's address in Russia, where she represents she has lived since 2008, had it exerted greater effort; 2) the alternative service permitted by the court did not comport with the Hague Convention and Russian rules for service; and 3) the alternative service permitted did not comport with due process, which requires alternative service to be reasonably calculated to provide actual notice.

#### 1. Efforts to Locate Toidze

Toidze first argues that the court erred in permitting Braverman to serve by publication without requiring Braverman to first make sufficient efforts to locate Toidze's new address, challenging the earlier findings by Judge Angell that Braverman had made a good faith effort to locate Toidze and therefore alternative service was appropriate, and by Judge Pollack that the alternative service was warranted and adequate. In support of this argument, Toidze only asserts: 1) that Braverman could have but failed to contact specific individuals who knew her whereabouts (her subsequent attorney in the Connecticut action, the special master in the

---

[7] *United States v. Raddatz,* 447 U.S. 667, 680-81 (1980).
[8] *Reardon v. Reardon*, 421 Fed. App'x 141, 142 (3d Cir. 2011).
[9] *Reardon,* 421 Fed. App'x at 142-43.

5

Connecticut case, and the friend who referred Toidze to Braverman); and 2) that Braverman should have contacted a "central authority" in Canada to obtain her current address. Toidze fails to establish that Braverman knew or should have recognized that the identified individuals were privy to Toidze's address,[10] and fails to identify a specific "central authority" in Canada which Braverman knew or should have known could provide Toidze's address around the time service was attempted.[11] More importantly, she makes no convincing argument that Judge Angell or Judge Pollack erred by failing to require Braverman to make such inquiries prior to allowing service by publication.

As the R&R explains, under the rules governing service in Canada, personal service is the preferred method for service in Canada, but where that is not possible, the court may order substitute service, including service by publication.[12] Here, the court reviewed Braverman's attempts to effectuate personal service, found personal service could not practically be effected, and allowed substitute service by publication. While the Court recognizes that alternative service should be used only as a last resort, the record before it does not warrant disturbing prior rulings which concluded that Braverman had made a good faith effort and took adequate and reasonable steps to discover Toidze's address prior to permitting serving by publication.

Toidze also alleges that Braverman's belief that she continued to reside in Canada after 2008 was "pure speculation" or even bad faith, suggesting that Braverman knew or should have known that Toidze had moved to Russia without providing any evidence to support this assertion. Judge Angell credited Braverman's assertions that the firm did not know that Toidze

---

[10] It is not clear to the Court that each of these individuals was aware of Toidze's move to Russia, as the attorney in question withdrew from representation of Toidze for reasons unknown to this Court in 2009, and Toidze did not advise the Connecticut court of her change of address until 2012.
[11] As noted above, Braverman did contact the Canadian postal service. Braverman had no reason to contact an authority such as the Canadian department of state in the absence of any information suggesting that Toidze may have moved from Canada.
[12] Can. Fed. Cts. R. 136; Ontario Sup. Ct. J. R. 16.04.

6

moved from Canada to Russia, and the Court finds no reason in the record to disturb this credibility finding.

        2.      <u>The Hague Convention</u>

Federal Rule of Civil Procedure 4(f) governs service of process on individuals in foreign countries. Where a defendant's address is known and when possible, service should be effectuated "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents,"[13] but where a defendant's address is not known, the Hague Convention does not apply, and where attempts at personal service have been futile, service may be "by other means not prohibited by international agreement as may be directed by the court."[14]

Here, Braverman first attempted to effectuate service using a process server who attempted to personally deliver the summons and complaint to Toidze at her last known address in Ontario, Canada. Braverman also attempted service by mail. Had Toidze continued to reside at her last known address, these forms of service would have complied with the Hague Convention. However, because she had moved, these attempts at service failed.

Once Braverman discovered that Toidze had moved, and was unable to discover her new address despite attempts to do so, the Hague Convention no longer applied as Toidze's address was unknown. Therefore, the Court rejects Toidze's argument that Braverman, which at all times believed Toidze lived in Canada,[15] was required to serve Toidze in Russia in accordance with the Hague Convention.

---

[13] Fed. R. Civ. P. 4(f)(1).
[14] Fed. R. Civ. P. 4(f)(3).
[15] "There is no evidence of record to support the allegation that [Braverman] knew that Toidze was in Russia while it was effectuating service in Canada." R&R at 15.

7

Plaintiff also argues that e-mail service is not permitted under the Hague Convention, Pennsylvania, or Russian law, even as a form of substitute service. However, e-mail notification was not the form of alternative service approved by the court. Rather, the court approved service by publication, and later required additional notice to the parties in the Connecticut litigation, including Toidze. E-mail notice was provided as a supplemental form of notice, in an attempt to ensure that Toidze received actual notice of the pending lawsuit and motion for default judgment. The court has not held, at any time in this litigation, that e-mail notification *alone* would constitute sufficient service of the summons and complaint.[16] However, as will be discussed below, after a hearing, Judge Angell concluded that the e-mail notification regarding the Motion for Default Judgment provided *actual* notice of the suit, such that the failure to respond to the suit was deliberate and not negligent.

3. <u>Service Comported with Due Process</u>

Due process requires that any form of service must be reasonably calculated to provide actual notice.[17] Toidze expresses outrage that publication of notice in Canada could be considered valid service on a resident of Russia. Despite Toidze's suggestion to the contrary,[18] Judge Angell does not take the position that, under any circumstances, publication in one country would provide valid service to a resident of another country. Rather, she concludes that service by publication in a journal circulated in the vicinity of Toidze's last known address, in the absence of any evidence that Toidze had moved outside of the circulation area for that newspaper, was reasonably calculated to provide actual notice and comported with due process

---

[16] Other district courts have held that service via e-mail, especially in combination with other forms of notice, comports with constitutional due process where plaintiff demonstrates that service by e-mail is likely to reach the defendant. *See, e.g. Gurung v. Malhotra,* 279 F.R.D. 215 (S.D.N.Y. 2011) (holding that court-ordered alternate service on a resident of Indian by publication and e-mail complied with due process, as those means of service were reasonably calculated to provide actual notice of the action).
[17] Fed. R. Civ. P. 4.
[18] Doc. No. 52 at 2.

8

requirements.[19] The Court agrees, especially in light of the additional steps taken to ensure that Toidze received actual notice before default judgment was entered.

Notably, Toidze does not argue that the notice provided was not *reasonably calculated* to effectuate actual notice; rather, she argues that she did not *receive* actual notice. Specifically, she argues that she moved to Russia and therefore could not have seen the publication notice or received notices sent by mail to Canadian addresses, that she abandoned her e-mail addresses and therefore did not receive the e-mail notification, and that she had stopped participating in the Connecticut litigation and had no access to the docket.[20]

The Court finds that Braverman's service by publication in the Canadian journal comported with due process, especially as the publication notice was supplemented by additional attempts to provide actual notice. Because service was reasonably calculated to provide actual notice of the action against her, entry of default judgment did not violate due process, and no relief is available under Rule 60(b)(4).

### B. Judgment Should Not be Vacated

Toidze then argues that even if service was proper, the default judgment should be vacated for good cause under Rule 55(c), and the case decided on its merits. The R&R addressed this argument, applying the three *Gold Kist* factors[21]—prejudice to plaintiff if default is vacated, whether defendant has a meritorious defense, and whether default was the result of

---

[19] Toidze also comments upon the nature of the newspaper selected for publication, but there is no evidence that the newspaper was selected in bad faith, nor that publication in that newspaper was not reasonably calculated to provide notice to Toidze, assuming that she remained in the vicinity of her last known address.

[20] In her June 13, 2013 ruling, the judge in the Connecticut litigation, addressing the adequacy of notice in that case, noted that Toidze had "never notified the court of any change of address to Russia. In fact, in the defendants' attempted Reply to the Motion for Default, Maya Toidze listed her address in Canada." R & R at 11, quoting D.Ct. Civ. Act. No. 07-712, Doc. No. 206. This Court notes that as Toidze was proceeding *pro se* in the Connecticut litigation after her counsel withdrew in November 2009, she had an obligation to keep that court apprised of her correct mailing address. Yet, Toidze did not advise the Connecticut court that she had moved to Russia until she filed a motion for reconsideration of the judgment by default in November 2012. D. Ct., Civ. Act. No. 07-712, Doc. No. 164.

[21] *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985).

defendant's culpable conduct—and concluding that those factors weigh against vacating the judgment.[22] The Court has reviewed Toidze's objections *de novo*, but agrees with the R&R's analysis and conclusions for the reasons set forth below.

1. Prejudice to Plaintiff

Certainly lifting the default judgment at this time would prejudice Braverman, as this litigation was filed in July 2009 regarding legal fees allegedly owed for legal services rendered in 2007 and 2008. Payment is long overdue.

In the nearly three years between the filing of the suit and the entry of default judgment in February 2012, Toidze took no steps to defend the suit. Then, in 2013, nearly one year after default was entered and four years after the suit was filed, Toidze filed a motion to vacate the judgment. She did so without disputing that she had retained Braverman to represent her in the Connecticut litigation, and agreed to the payment terms alleged in the Complaint. This case does not involve complicated legal issues; it is a simple breach of contract suit and damages were calculated fairly based upon the monthly billings statements Braverman mailed to Toidze. Braverman represented to the court that Toidze had never challenged those monthly invoices, and Toidze does not dispute this representation. In light of these considerations, to lift the default judgment and allow litigation to start anew now, more than four years after the suit was filed, would be prejudicial to Braverman.

2. Meritorious Defense[23]

---

[22] *Gold Kist, Inc.* 756 F.2d at 19.
[23] To the extent that Toidze intends to also argue that the alleged misconduct discussed below provides an independent basis to set aside default judgment under Rule 60(b)(3), the Court rejects that argument, agreeing with the R&R that to prevail under Rule 60(b)(3), the moving party must establish that the misconduct prevented the moving party from fully and fairly presenting their case. *See Floorgraphics, Inc. v. News Am. Marketing In-Store Services, Inc.*, 434 Fed. App'x 109, 111 (3d Cir. 2011). Toidze does not establish that the alleged problems with Braverman's representation in the Connecticut litigation in any way impacted her ability to participate in and present her case here.

Toidze argues that she has a meritorious defense to the lawsuit, which she did not have the opportunity to raise, and therefore an extreme and unexpected hardship has resulted from the default judgment. Specifically, she argues that the legal fees sought are not warranted, notwithstanding the legal services Braverman provided pursuant to their contract, because no discovery was taken, Braverman had an undisclosed, impermissible conflict of interest during the course of its representation of her in the Connecticut litigation, and Braverman improperly removed the case from state to federal court in Connecticut. After a hearing, the R&R found that Toidze's alleged defense is not supported, and that even if Toidze's dissatisfaction with Braverman's representation were justified, it would not provide a complete defense to the breach of contract claim. The Court agrees with the findings set forth in the R&R.

3. Culpable Conduct

With regard to Toidze's culpability in the entry of default, Judge Angell found Toidze's claims that she had no knowledge of this action less than credible, noting that Braverman e-mailed a copy of Judge Pollack's Order, as well as the summons and complaint, to Toidze at two different e-mail addresses, both of which she had provided to Braverman during the course of its representation of her, and those e-mails were not returned as undeliverable.[24] During the hearing, Judge Angell questioned Toidze's current counsel about e-mail addresses he used to communicate with Toidze. He acknowledged that he used more than one address. Judge Angell noted that current counsel sent at least one e-mail message to Toidze using the same e-mail address to which Braverman had sent a copy of the summons and complaint in this action. The R&R concluded: "[t]hese facts suggest that Toidze's failure to participate in this litigation was intentional, and not mere negligence." Noting also the filing of notice on the docket in the

---

[24] In her objections, Toidze claims that these e-mail addresses were "abandoned" when she moved to Russia, and that "PDF is not a dominant file format for transmitting image/document files in Russia." Notably, she does not claim that she did not receive these e-mail communications.

11

Connecticut action, and Toidze's provision to the Connecticut court of one of the mailing addresses and one of the e-mail addresses used by Braverman to provide notice, the Court agrees that Toidze likely received actual notice of this suit but chose not to participate in the litigation. This suggests that Toidze's failure to respond to this lawsuit was intentional rather than negligent.

### C. Personal Jurisdiction

Next, Plaintiff argues that the Court lacks personal jurisdiction over her because she lacks sufficient contacts with the forum. The Court disagrees. Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants to the extent provided by the law of the state in which the federal court sits.[25] Pennsylvania's Long-Arm Statute allows personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the Fourteenth Amendment.[26] Under this standard, nonresident defendants are required to have minimum contacts with Pennsylvania so as not to offend traditional notions of fair play and substantial justice.[27] There are two types of personal jurisdiction: general and specific.[28]

To establish specific jurisdiction, a plaintiff must show that: (1) the defendant purposely directed activities at the forum; (2) the litigation arose out of or related to one or more of these activities; and (3) jurisdiction of the court comports with fair play and substantial justice.[29] This is a breach of contract action. Braverman is a professional corporation organized pursuant to the laws of Pennsylvania and with its principal place of business in Pennsylvania. Toidze does not dispute the factual allegations in the Complaint insofar as it alleges that Toidze met with

---

[25] Fed. R. Civ. P. 4(e).
[26] 42 Pa. Stat. Ann. § 5322(b) (West 1981); *Mellon Bank*, 960 F.2d at 1221.
[27] *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).
[28] *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9 (1984).
[29] *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,* 566 F.3d 94, 102-3 (3d Cir. 2009).

members of the Braverman law firm in Philadelphia, and executed a retainer agreement with Braverman in Philadelphia, knowing it was a Philadelphia law firm, for representation in litigation in Connecticut. Monthly invoices documenting fees and expenses incurred in the litigation were mailed to Toidze from Pennsylvania. The dispute before the Court arose from Toidze's failure to pay Braverman the fees owed pursuant to the parties' retainer agreement. The Court concludes that Toidze personally directed activities at the forum, the litigation arose from an alleged breach of the retainer agreement, the breach was related to the activities directed at the forum, and that exercising jurisdiction over Toidze, in light of these contacts, comports with fair play and substantial justice.

### D. Inconvenient Forum

Although it is not well articulated, Toidze also appears to raise the argument that the District of Connecticut would be a more convenient forum for this litigation. As the litigation in this case has already resulted in a judgment, and the case will remain closed for the reasons set forth herein, there is no need to address this issue.

### IV. CONCLUSION

For the reasons set forth above, the Court will approve and adopt the R&R. An appropriate order follows.